IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

CHARLES T. HOYE,                     )
  Plaintiff,                )
                                     )
v.                                   )  Civil Action No. 7:14-cv-00124
                                     )
HAROLD CLARKE, et al.,               ) By: Joel C. Hoppe
  Defendants.               )  United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

This matter comes before the Court on the Defendants' Motion for Summary Judgment, ECF No. 24, and the Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 33. The motions are before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 34. The parties have fully briefed the matter and it is ripe for adjudication. Having considered the parties' pleadings, their briefs, and the applicable law, I find that there is not a genuine dispute of material fact and the Defendants are entitled to judgment as a matter of law. I also find that amending the Complaint would be futile. I therefore recommend that the presiding District Judge **GRANT** the Motion for Summary Judgment and **DENY** the Motion for Leave to File an Amended Complaint.

### I. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014) (per curiam). Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute over a material fact exists if "a reasonable jury

1

could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Appalachian Power Co. v. Arthur*, --- F. Supp. 2d ---, 2014 WL 3900618, at *6 (W.D. Va. 2014) (Urbanski, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party makes that showing, the nonmoving party must then produce admissible evidence—not mere allegations or denials—establishing the specific material facts genuinely in dispute. Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wilkins v. Montgomery*, 751 F.3d 214, 220 (4th Cir. 2014). When deciding a summary judgment motion, the court must consider the whole record and draw all reasonable inferences in the light most favorable to the nonmoving party. *Tolan*, --- U.S. ---, 134 S. Ct. at 1866. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the record reveals a genuine dispute over material facts. *See id.* "The court considers a *pro se* plaintiff's verified complaint as an affidavit that may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge." *Miller v. Marsh,* No. 7:11cv180, 2012 WL 844391, at *6 (W.D. Va. Mar. 12, 2012) (citing *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991)).

## II. Procedural History and Facts

Charles T. Hoye, a Virginia inmate proceeding *pro se*, filed a verified Complaint under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Virginia Rights of Persons with Disabilities Act ("Virginia Act"). He also alleges that the Defendants retaliated

2

against him because he filed a suit in state court. Hoye names as defendants Director of Virginia Department of Corrections ("VDOC") Harold Clarke, VDOC Regional Administrator Gary Bass, Warden of Coffeewood Correctional Center ("CCC") Samuel Pruett, CCC Assistant Warden I.T. Gilmore, CCC Reentry Manager R.W. Martin, CCC Institutional Programs Manager D. Gourdine, and CCC Food Service Administrator L.D. Moore (collectively "Defendants"). Compl. 6–10, ECF No. 1. He requests declaratory, equitable, and monetary relief against the Defendants in their individual and official capacities. *Id.* at 30–34.

In or around March 2012, CCC instituted Common Fare, a meal plan designed to provide food for inmates adhering to religious diets. *Id.* ¶¶ 5, 12; Gourdine Aff. Ex. A, at 1, ECF No. 25-1. Common Fare deviates in content and preparation from the standard ("main line") menu, which does not follow religious rules. Hoye is a practicing Traditional and Messianic Jew and was approved for Common Fare participation on or about September 26, 2012. *Id.* ¶¶ 12, 14. CCC has a practice of serving special meals on certain days of the year, such as Thanksgiving, Christmas, Memorial Day, and Labor Day. *Id.* ¶¶ 6, 7, 9. These meals feature larger portions and a greater variety of entrées and desserts. *Id.* In contrast to main line and other meal plans, Common Fare is not augmented on special meal days, but remains the same as on any other day. *Id.* ¶ 9.

In the summer of 2012, Hoye was diagnosed with Type II diabetes. *Id.* ¶ 13. A CCC physician prescribed Metformin twice daily and insulin by injection as needed. *Id.* The physician also approved him to partake in the diabetic diet, a 2,000-calorie plan VDOC offers diabetics to help them regulate their insulin levels. *Id.*; Def. Br. in Supp. 6, ECF No. 25; Sprecht Aff. ¶ 5, ECF No. 25-2. Hoye checks his blood sugar twice daily around 5:00 a.m. and 3:00 p.m. Compl. ¶ 15. CCC nurse Donna Sprecht, R.N., asserts, and Hoye does not refute, that he manages his

3

own medication timing. Sprecht Aff. ¶ 6; *see* Pl. Br. in Opp. 20–23, ECF No. 32. Hoye should eat within one hour of taking Metformin to stabilize his insulin levels. Sprecht Aff. ¶ 6. At mealtimes during the relevant period, diabetic meals were served first, followed by main line, then Common Fare. Compl. ¶¶ 16, 17.

From May through November 2013, Hoye filed multiple grievances concerning the policies and actions of CCC administrators. On May 24, Hoye submitted an informal complaint requesting that there be a Common Fare option designed for diabetics, with appropriate food choices and mealtimes. *Id.* ¶18. Defendant L.D. Moore rejected Hoye's complaint. *Id.* ¶ 19. On August 12, Hoye submitted an informal complaint contending that not providing additional Common Fare food on special meal days discriminated against Common Fare participants based on their religious beliefs. *Id.* ¶ 20. A non-party administrator rejected his complaint. *Id.* ¶ 21.

On August 20 and 21, heavy fog enveloped CCC, requiring additional security measures that slowed breakfast service. *Id.* ¶ 22. On August 21, Hoye checked his blood sugar and took Metformin shortly after 5:00 a.m. *Id.* ¶ 23. Around 8:30 a.m., Hoye detected a drop in his blood sugar and began experiencing symptoms consistent with low blood sugar. *Id.* Hoye went to the dining room during main line service, explained his medical emergency to the supervisor, and took a main line meal. *Id.*

To partake in Common Fare, Hoye signed an agreement outlining eligibility requirements, one of which is abstaining from eating main line food. Gourdine Aff., Ex. B. The sanction for a first violation is a six-month suspension from Common Fare participation. *Id.* On September 18, Hoye had an administrative hearing before Gourdine concerning his violation of the Common Fare agreement for taking a meal from the main line. Gourdine Aff. ¶ 8; Compl. ¶ 25. Gourdine noted Hoye's medical condition, but nonetheless recommended that Hoye be

4

suspended from Common Fare. Gourdine Aff. Ex. C. Gourdine's recommendation was forwarded to Martin for administrative review and approval. Gourdine Aff. Ex. C.

On August 29, Hoye submitted an Informal Complaint to defendant Gilmore, reiterating his request for a Common Fare diabetic option. Compl. ¶ 26. On September 3, Gilmore rejected Hoye's complaint. *Id.* ¶ 27. On September 10, Hoye lodged a formal complaint over the lack of extra food for Common Fare participants on special meal days, *id.* ¶ 30, and on September 26, Hoye lodged a formal complaint over the lack of a Common Fare diabetic option, *id.* ¶ 33. Nonparty CCC and VDOC administrators rejected both complaints. *Id.* ¶¶ 31–32, 34–35.

In early October, Hoye filed a lawsuit in the Circuit Court of Culpeper County, Virginia, requesting that the court declare illegal CCC's and VDOC's refusal to provide extra food or a Common Fare diabetic option. *Id.* ¶ 36; *Hoye v. Va. Dep't of Corr.*, CL13001162-00 (Culpeper Cnty. Oct. 10, 2013). Hoye named as defendants VDOC Director Clarke, VDOC Regional Operations Chief Malcolm Taylor, and Warden Pruett. Compl. ¶ 37. The complaint was filed and summons issued on October 11, 2013. *See* Va. Court Case Info. Sys., *Hoye v. Va. Dep't of Corr.*, CL13001162-00, *available at* http://ewsocis1.courts.state.va.us/CJISWeb/CaseDetail.do.

On October 15, Martin completed the administrative review of Hoye's hearing and approved Gourdine's suggested suspension. Gourdine Aff. Ex. C. Hoye was suspended from Common Fare for six months.[1] Gourdine Aff. Exs. C, D; Compl. ¶ 38. Also on October 15, Hoye submitted an informal complaint alleging that his suspension from Common Fare was meant to

---

[1] Gourdine originally recommended a one-year suspension, believing the August 21 infraction to be Hoye's second. Gourdine Aff. ¶¶ 8–10, Ex. C. Upon further review, Gourdine determined that Hoye's previous infraction had been waived due to mitigating circumstances. *Id.* ¶ 10. Gourdine changed his recommendation to a six-month suspension on October 23 and Martin approved the change on October 24. *Id.* ¶¶ 9–10, Ex. D.

5

interfere with or retaliate for filing the state suit. Compl. ¶ 39. Gourdine avers that Hoye was not removed from Common Fare because he filed a lawsuit. Gourdine Aff. ¶ 11.

On October 31, Hoye submitted a formal grievance to Warden Pruett claiming that his suspension from Common Fare was meant to interfere with or retaliate for filing the civil suit. *Id.* ¶ 43. Pruett found Hoye's grievance "unfounded." *Id.* ¶ 44. Hoye appealed to defendant Bass, who affirmed Pruett's decision on December 6. *Id.* ¶¶ 45–46.

On December 6, Correctional Supervisor R.L. Drake performed a detailed search of Hoye's person, property, and living area. *Id.* ¶ 47. On December 10, Drake charged Hoye with violating a rule while in the law library. *Id.* ¶¶ 48–49; Hoye Aff. Ex. F, ECF No. 32-1. Hoye was reviewing another inmate's court filing and Drake believed that accessing another inmate's computer account violated a rule. Hoye Aff. Ex. F. At a hearing on December 17, the hearing officer determined that there was no rule against Hoye's conduct and he was found not guilty. *Id.*; Compl. ¶ 50.

In their brief in support of their Motion for Summary Judgment, the Defendants provide additional facts supported by affidavits and exhibits. Particularly pertinent is their description of Common Fare food preparation:

> Common Fare meals are highly regulated and changes are not permitted to be made at the facility level. See Gourdine Aff. Enclosure A (Food Service Manual V. C.) Common Fare foods must be stored in designated areas away from the non Common Fare foods. Id. (Food Service Manual V. I.) Common Fare foods are regulated as to how, and how often, foods can be heated; foods cannot be reheated. Id. (Food Service Manual V. G.) Foods, other than fresh fruits and vegetables, are certified by a recognized Orthodox standard. Id. (Food Service Manual V. D.) All pans, lids, utensils, and other equipment are cleaned and handled in accordance with strict guidelines apart from the non Common Fare items and the food workers cannot handle both Common Fare and non Common Fare items at the same time. Id. (Food Service Manual V. J.) All Common Fare meals are placed on designated serving trays which are covered and placed in either a hot unit or refrigerated unit to keep the temperature constant. Id. (Food Service Manual V. L.)

Pl. Br. ¶ 5. Nurse Sprecht also avers that the diabetic diet Hoye was approved for is not mandatory. Sprecht Aff. ¶ 5. If Hoye chooses not to eat the diabetic diet, "medical staff are available to assist and educate Hoye in making good and healthy food choices" from other meal plans, including "select[ing] suitable foods, in appropriate portions, [and] limiting his intake of carbohydrates and sugars." *Id.* Furthermore, Hoye is allowed to purchase food from the commissary to keep in his cell should he need to maintain his blood sugar levels between mealtimes. *Id.* ¶ 6.

### III. Analysis

Hoye brings six causes of action against the Defendants. Claim one alleges that the Defendants' failure to provide extra food for Common Fare participants on special meal days violates Hoye's right to free exercise of religion and denies him due process and equal protection under the law. Compl. ¶¶ 52–55. Claim two alleges that the Defendants' failure to provide extra food for Common Fare participants on special meal days violates RLUIPA. *Id.* ¶¶ 56–59. Claim three alleges that the Defendants' failure to provide a Common Fare diabetic option violates Hoye's right to free exercise of religion and denies him due process and equal protection under the law. *Id.* ¶¶ 60–63. Claim four alleges that the Defendants' failure to provide a Common Fare diabetic option violates the ADA, the Virginia Act, and the Rehabilitation Act. *Id.* ¶¶ 64–67. Claim five alleges that the Defendants' failure to provide a Common Fare diabetic option violates RLUIPA. *Id.* ¶¶ 68–71. Claim six alleges that the Defendants have retaliated against Hoye for his attempts to redress his grievances.

I address the constitutional and RLUIPA claims first, then turn to the disability discrimination and retaliation allegations.[2]

A.    *Free Exercise*

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices." *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001)). This prohibition extends to "polices that impose a substantial burden on the prisoner's right to practice his religion." *Id.* (citing *Lovelace v. Lee*, 472 F.3d 174, 198 & n.8 (4th Cir. 2006)). A "substantial burden" on religious exercise occurs when the government, through act or omission, puts substantial pressure on an adherent to modify religious behavior or choose between a government benefit and a religious precept. *See Lovelace*, 472 F.3d at 187 (quoting *Thomas v. Review Bd. of Indiana Emp't Sec. Div.*, 450 U.S. 707, 718 (1981); *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). To succeed on a free exercise claim, an inmate must demonstrate that a regulation substantially burdens a sincerely held religious belief; the prison officials then must demonstrate that the regulation is reasonably related to legitimate penological interests. *Wall*, 741 F.3d at 498–99; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Brown v. Ray*, 695 F. Supp. 2d 292, 300 (W.D. Va. 2010).

Hoye alleges that his free-exercise rights have been violated by VDOC and CCC policies that force him to choose between adhering to a religious diet on one hand and partaking in special meal days or receiving a diet designed for diabetics on the other. Pl. Br. in Opp. 8, 19.

---

[2] In their brief, Defendants argue that Clarke and Bass should be summarily dismissed because they were not personally involved in any incident underlying the suit and that all defendants should be granted immunity from monetary damages. Def. Br. in Supp. 5–6. Because I find that summary judgment is warranted for all Defendants on each of Hoye's claims, I do not address these issues.

8

Hoye does not argue that these policies directly impair his ability to practice religion. Rather, Hoye contends that the benefits he must forgo to maintain his religious dietary requirements are so alluring that their denial places substantial pressure on him to abandon his religious precepts. *Id.*

"A substantial burden must impose more than an inconvenience on a prisoner's right to freely practice his or her religion." *Gordon v. Mullins*, No. 7:12cv494, 2014 WL 1118199, at *5 (W.D. Va. Mar. 20, 2014) (citing *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 131 S.Ct. 1651, 1658–59 (2011)), *aff'd*, 582 F. App'x 248 (4th Cir. 2014). "'[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs' are insufficient bases to state a claim under [the] Free Exercise Clause." *De'lonta v. Johnson*, No. 7:11cv175, 2012 WL 2921762, at *9 (W.D. Va. July 17, 2012) (*quoting Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)), *aff'd*, 490 F. App'x 579 (4th Cir. 2012). Evaluating Hoye's situation against the backdrop of relevant case law, I find no material facts in dispute that demonstrate, as a matter of law, that either of the choices he faces places a substantial burden on his religious exercise.

In cases considering the coercive allure of a government benefit, courts evaluate the significance of the benefit a religious adherent must forgo to maintain his beliefs—the more significant the benefit, the more it unlawfully coerces the adherent. For example, in *Sherbert v. Verner*, 374 U.S. 398 (1963), the plaintiff lost her employment because she refused to work on Saturday, the Sabbath Day of her faith. *Id.* at 399. The South Carolina Employment Security Commission considered the plaintiff's restriction on her availability as a refusal to accept suitable work when offered and denied her unemployment benefits. *Id.* at 401. The Supreme

Court found that when the benefit of employment or unemployment compensation was premised upon violating a religious practice, "the pressure to forego that practice is unmistakable." *Id.* at 404; *see also Thomas*, 450 U.S. at 717–18 (denied unemployment benefits after leaving job that transitioned to only manufacturing weapons, which was against his faith as a Jehovah's witness). Other benefits that courts have considered to be unlawfully coercive include Social Security benefits, *Flemming v. Nestor*, 363 U.S. 603 (1960), tax exemptions, *Speiser v. Randall*, 357 U.S. 513 (1958), and low-income assistance programs, *Lebron v. Sec'y, Fla. Dep't of Children & Families*, 710 F.3d 1202 (11th Cir. 2013).

Conversely, if a government benefit is not significant enough, then its loss does not exert unconstitutional pressure on a religious adherent. In *Goodall by Goodall v. Stafford County School Board*, the parents of a hearing-impaired boy brought suit to compel the county school board to pay for a cued speech transliterator. 60 F.3d 168, 173 (4th Cir. 1995). The county provided free special-education services while the boy was in public school, but refused to provide services after his parents moved him to a private religious school. *Id.* at 169–70. The Fourth Circuit found that free special-education services were not a significant enough benefit to place a substantial burden upon the Goodall's choice to enroll their son in religious school.

Further, courts have repeatedly held that inmates may be entitled to meals that meet their religious beliefs, but they are not entitled to have those meals conform to their personal preferences. *Compare, e.g., Wall*, 741 F.3d at 495 (quoting *Lovelace*, 472 F.3d at 198–99) (internal quotation marks omitted) ("Under the Free Exercise Clause, a prisoner has a clearly established right to a diet consistent with his religious scruples, including proper food during Ramadan."), *with Malik v. Sabree*, No. C.A.NO. 8:06-319-RBH, 2007 WL 781640, at *5 (D.S.C. Mar. 13, 2007) (finding no substantial burden on free exercise when the prison provided meat

that met an inmate's religious precepts, but was not the Halal meat he preferred), *Couch v. Jabe*, 479 F. Supp. 2d 569, 585 (W.D. Va. 2006) (finding that receiving religiously appropriate, but cold meals during part of Ramadan was not a substantial burden); *Hatcher v. Bristol City Sheriff's Office*, No. 7:08cv440, 2008 WL 2944557, at *3 (W.D. Va. July 29, 2008) (finding that denying a pork-free diet did not impose a substantial burden when inmate could meet his religious needs with other menu items); *Norwood v. Strada*, 249 F. App'x 269, 271–72 (3d Cir. 2007) (finding no substantial burden when an inmate was denied seven religiously certified meals during three-day lockdown).

The benefits Hoye must forgo to maintain his religious diet are too insignificant to substantially burden his free exercise of religion. His first complaint is that Common Fare participants do not receive additional food on special meal days. Occasional receipt of special food does not approach the essential significance of unemployment benefits, income assistance, or tax exemptions. It is even less significant a benefit than the free special-education services discussed in *Goodall*. The plaintiffs in *Sherbert* and *Thomas* were forced to choose between their religion and essential income; they were pressured to abandon their beliefs to support themselves and their families. By remaining on Common Fare, Hoye does not face a similarly coercive choice. He receives adequate nutrition prepared in accordance with his faith, and Common Fare includes different menus for his religious holidays such as Passover. Def. Br. in Supp. 9; Gourdine Aff. Enclosure A, 7–8. The allure of occasionally receiving extra desserts or more entrée choices is not significant enough to pressure a person with sincerely held religious beliefs to forgo his faith.

Hoye also asserts that not having a Common Fare diabetic option forces him to choose between his faith and his health. Pl. Br. in Opp. 19–23. He argues that the diabetic diet is

11

presumptively "medically necessary" for him because CCC medical staff ordered it on his behalf. Pl. Br. in Opp. 20. This overstates the evidence. Nurse Specht avers in her affidavit that while the diabetic diet was ordered for Hoye, "it is not mandatory that he choose this diet." Specht Aff. ¶ 5. Her affidavit makes clear that CCC provides resources to help Hoye and other diabetics manage their condition if they choose to receive food from the main line or Common Fare, rather than the diabetic diet. *Id.* Concerning meal content, CCC medical staff are available to "assist and educate Hoye in making good and healthy food choices." *Id.* Concerning meal timing, Hoye is authorized to keep snacks from the commissary in his cell should he need to eat in between mealtimes to maintain his blood sugar levels. *Id.* at ¶ 6. Courts have found that providing self-avoidance education is constitutionally sufficient to satisfy a diabetic inmate's needs. *See, e.g.*, *Wilson v. Woodford*, No. 1:05cv560, 2009 WL 839921, at *8 (E.D. Cal. Mar. 30, 2009). While receiving a diet designed to treat his diabetes may be more convenient than self-avoidance, a "burden that is merely an inconvenience on religious exercise is not substantial." *Brown v. Mathena*, No. 7:14cv20, 2014 WL 4656378, at *5 (W.D. Va. Sept. 16, 2014) (quoting *Konikov v. Orange Cnty., Fla.*, 410 F.3d 1317, 1323 (11th Cir. 2005)) (internal quotation marks omitted). Hoye need not choose between his health and his religion; the options available to him adequately meet his medical and religious dietary needs.

I do not question the sincerity of Hoye's beliefs or the importance of a religiously prescribed diet to his faith. I also acknowledge that in the austere life of an inmate extra or special food holds greater allure than it would for an average citizen. *See* Hoye Aff. ¶ 6. Still, the significance and corresponding coercive power of the benefits Hoye has foregone do not rise to the level required by law to impose a substantial burden on his free-exercise rights. The policies Hoye complains of may make adherence to his religion more challenging, but they do not violate

his constitutional rights. Therefore, I recommend that the Court grant summary judgment for the Defendants on the free exercise claims in Counts One and Three.

B.     *RLUIPA*

Congress enacted RLUIPA to "provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 135 S.Ct. 853, 859–60 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014)). RLUIPA mandates a higher standard of review for government actions than that used in constitutional claims—strict scrutiny instead of reasonableness. *Lovelace*, 472 F.3d at 186. As a threshold matter, however, "RLUIPA incorporates the 'substantial burden' test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in allocating its burden of proof." *Id.* at 198 n.8; 42 U.S.C. § 2000cc-2 ("If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion" on any element of the claim except the "substantial burden" element). Because Hoye has failed to demonstrate a substantial burden under the First Amendment, he has also failed to meet the initial inquiry under RLUIPA. *See, e.g.*, *Mathena*, 2014 WL 4656378, at *5 (simultaneously rejecting claims under the First Amendment and RLUIPA for failure to demonstrate a substantial burden). Therefore, I recommend that the Court grant summary judgment for the Defendants on Counts Two and Five.

C.     *Equal Protection*

The Fourteenth Amendment's Equal Protection Clause requires states to treat similarly situated individuals alike under the law. *Plyer v. Doe*, 457 U.S. 202, 216 (1982); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A state regulation or policy is presumed valid and will be sustained from challenge if the classification it makes is rationally related to a legitimate

state interest. *Morrison*, 239 F.3d at 654 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Generally, if the challenged policy interferes with a fundamental constitutional right or uses a suspect classification, such as race or national origin, then it is subjected to strict scrutiny. *Morrison*, 239 F.3d at 654. This review is altered for penitentiary policies because they have unique inherent needs and problems related to their penological purpose. *See id.* While the coverage of the equal protection clause extends to inmates, a court's review of an inmate's claim is "tempered by the recognition that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 655–54 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). Therefore, a "prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 84; *see Morrison*, 239 F.3d at 655. "This more deferential standard applies even when the alleged infringed constitutional right would otherwise warrant higher scrutiny, such as when an inmate claims that his constitutional right to equal protection of the laws has been violated." *Morrison*, 239 F.3d at 655 (citation omitted).

To state an equal protection claim, Hoye must first demonstrate that he was treated differently than others similarly situated and the disparate treatment was intentional or purposeful. *Couch*, 479 F. Supp. 2d at 590. Hoye claims that as a Common Fare participant he is denied benefits granted to inmates who eat main line food, specifically additional food on special meal days and a menu for diabetics. Compl. ¶¶ 53, 61. These claims fail as a matter of law. This Court has repeatedly held that inmates who elect to receive Common Fare are not similarly situated to the rest of the inmate population. *See, e.g.*, *Mathena*, 2014 WL 4656378, at *3; *Awe v. Va. Dep't of Corr.*, No. 7:12cv546, 2013 WL 5988869, at *2 (W.D. Va. Nov. 12, 2013), *aff'd*

*sub nom. Awe v. Clarke*, 564 F. App'x 54 (4th Cir. 2014), *cert. denied*, 135 S.Ct. 242 (2014);

*Lovelace v. Bassett*, No. 7:07cv506, 2009 WL 3157367, at *12 (W.D. Va. Sept. 29, 2009). Hoye

has not identified any disparate treatment between himself and other inmates who receive

Common Fare and are similarly situated to him. He has therefore failed to put forward any

evidence to support the first element of his equal protection claims. Therefore, I recommend that

the Court grant summary judgment for the Defendants on these claims in Counts One and Three.

D.      Due Process

          To establish a violation of due process under the Fourteenth Amendment, a plaintiff must

demonstrate that the government deprived him or her of a protected liberty interest arising under

either the Constitution or state law. *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005). An inmate

must additionally demonstrate that the deprivation caused him an atypical and significant

hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484

(1995). If a plaintiff meets these requirements, the constitutionality of the challenged process is

then evaluated by balancing "(1) the private interest affected by the government action; (2) the

risk of erroneous deprivation through the procedures used and the probable value, if any, of

alternative or additional procedures; and (3) the state's interest, including the function involved

and the fiscal and administrative burdens of added safeguards." *Lovelace*, 472 F.3d at 199 (citing

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

          Hoye does not specify exactly how the Defendants have violated his due process rights.

Reading the Complaint liberally, Hoye's potential liberty interests are additional food on special

meal days, a Common Fare menu for diabetics, and participation in the Common Fare program.

As discussed previously, the first two interests do not rise to the level of constitutional violations

and consequently cannot be liberty interests in the due process context. *See Neal-El v. Beitzel*,

15

No. CIV.A. PJM-13-1838, 2014 WL 2865923, at *4 (D. Md. June 23, 2014) ("Having concluded Neal–El's claims do not rise to a matter of constitutional proportion, there is no violation of due process."). Considering the third, Hoye does have a right under the Free Exercise Clause "to receive a diet consistent with his sincerely held religious scruples." *Bassett*, 2009 WL 3157367, at *6 (citing *Ross v. Blackledge*, 477 F.2d 616, 618–19 (4th Cir. 1973). When the Defendants suspended Hoye from Common Fare participation for six months, they deprived him of this liberty interest. Hoye, however, has failed to demonstrate that this suspension has caused him atypical or significant hardship. *See Awe*, 2013 WL 5988869, at *3. A six-month suspension was the penalty for a first violation prescribed by the Common Fare agreement Hoye signed, Gourdine Aff. Enclosure B, and Hoye does not allege that he was "permanently removed from Common Fare or completely deprived of his ability to practice any religion by the six-month suspension," *Awe*, 2013 WL 5988869, at *3 n.8. Hoye's sanction was typical and not significant.

Additionally, the *Mathews* factors are in the Defendants' favor. Hoye's private interest "is slight because [he] does not allege he has been completely deprived of his ability to practice any religion he professes." *Id.* at *3. The risk of erroneous deprivation under the current procedures is small; they include a hearing before an administrator at which the inmate can present evidence and argument on his or her own behalf and the opportunity to appeal the administrator's ruling. Compl. ¶¶ 25, 38, 45–46. Hoye does not propose alternative or additional safeguards that could improve the process. Further, Common Fare "menu items are more expensive than the VDOC main menu items, so officials have an interest in ensuring that prisoners receiving the [Common Fare] do so because of their sincere religious beliefs." *Blount v. Ray*, No. 7:08cv504, 2009 WL 2151331, at *6 (W.D. Va. July 17, 2009). Courts in this district have previously concluded that Common Fare "procedures further legitimate and neutral VDOC

16

interests as a cost-efficient, uniform manner by which to accommodate inmates' various religious dietary beliefs at numerous VDOC facilities." *Muhammad v. Mathena*, No. 7:14cv134, 2015 WL 300363, at *3 (W.D. Va. Jan. 22, 2015); *see also Blount*, 2009 WL 2151331, at *6 ("[T]he court finds no material fact in dispute in this case that the existing procedural protections available to inmates on the CFD program satisfy the dictates of due process under . . . *Mathews*.").

Hoye cannot clear the initial hurdles to his due process claims and would be unable to demonstrate the unconstitutionality of the challenged policies if he did. Therefore, I recommend that the Court grant summary judgment for the Defendants on these claims in Counts One and Three.

E.      *ADA, Rehabilitation Act, and Virginia Act*

Hoye alleges that the Defendants' policies requiring him to choose between a diabetic diet and Common Fare discriminate against him because of a disability in violation of the ADA, Rehabilitation Act, and Virginia Act. Compl. ¶ 65. All three acts share substantially similar definitions of disability and elements for claims against a public institution. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999) ("The ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts."); *Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 224 (4th Cir. 1993) ("The Virginia Rights of Persons with Disabilities Act was modeled after and is almost identical to the Rehabilitation Act."). To state a claim under any of the acts, a plaintiff must allege: "'(1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability.'" *Bane v.*

*Va. Dep't of Corr.*, No. 7:12cv159, 2012 WL 6738274, at *11 (W.D. Va. Dec. 28, 2012) (brackets omitted) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)).[3]

Assuming that Hoye can satisfy the first two elements, he nonetheless cannot satisfy the third element because he has not alleged that he has been denied anything based on his disability. This is not a situation where Hoye lacks access to a program or benefit generally available to non-disabled inmates. Hoye has access to the diabetic diet specifically because of his disability, and his only complaint is that the diabetic option does not conform to his religious precepts. If anything, his complaint concerns his medical treatment, as Hoye is dissatisfied with the form of the medical help offered for his diabetes. Allegations of inadequate medical treatment do not state a claim for disability discrimination. *See Goodman v. Johnson*, 524 F. App'x 887, 890 (4th Cir. 2013) (per curiam) (noting that the ADA and the Rehabilitation Act "prohibit[] discrimination because of disability, not inadequate treatment for disability"); *Miller v. Hinton*, 288 F. App'x 901, 902–03 (4th Cir.2008) (rejecting ADA and Rehabilitation Act claims where an inmate alleged only inadequate medical treatment).

---

[3] Specifically, Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C.A. § 794(a). The Virginia Act requires that "[n]o person with a disability who is otherwise qualified shall on the basis of his disability be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving state financial assistance or under any program or activity conducted by or on behalf of any state agency." Va. Code Ann. § 51.5-40 (2014).

18

Hoye was allowed to take diabetic meals based on his medical condition. He also was allowed to participate in Common Fare. As Nurse Sprecht explained, Hoye can eat from the Common Fare menu, limit his intake of sugars and carbohydrates, and receive nutritional counseling to accommodate his medical and religious dietary needs. Specht Aff. ¶ 5. Hoye does not provide any evidence that he has been unable to manage his diabetes while on Common Fare. There is simply no evidence that Hoye has been discriminated against based on his disability.[4] Hoye cannot sustain a claim under the ADA, the Rehabilitation Act, or the Virginia Act. Therefore, I recommend that the Court grant summary judgment to the Defendants on Count Four.

F.      Retaliation

A claim for retaliation under § 1983 requires an inmate to provide "specific facts to establish that (a) in response to his exercise of a constitutionally protected right, (b) the defendant took some action that (c) adversely impacted or injured him and his ability to exercise his constitutional right." *Makdessi v. Fleming*, No. 7:13cv79, 2014 WL 5384596, at *2 (W.D. Va. Sept. 22, 2014) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.1994)). An inmate must

---

[4] Hoye cites to *Lee v. District of Columbia*, 920 F. Supp. 2d 127 (D.D.C. 2013), to support his disability claim. Lee was a correctional officer with Type II diabetes who required medication and regular meals to keep from falling asleep. 920 F. Supp. 2d at 130. Lee alleged that his employer refused him regular meal breaks then fired him for falling asleep on the job. *Id.* at 130–32. The employer argued that Lee's diabetes did not substantially limit him because it was kept under control by Lee's mitigating measures, which included regular meals. *Id.* at 134. The court held that the employer could not simultaneously claim that Lee's diabetes was under control and deny him the methods that kept it under control, and it denied the employer's motion for summary judgment. *Id.* at 134–35. Hoye's situation is fundamentally different from Lee's. Lee required regular meals to manage his diabetes, but Hoye manages his without the diabetic meal plan he seeks. By all accounts, Hoye has kept his diabetes under control through other methods such as medication, insulin shots, Common Fare meals, and snacks in his room. Defendants are thus not employing the circular logic seen in *Lee*. Furthermore, whether Hoye has a disability is immaterial, as he cannot satisfy the third element under any of the acts.

present more than conclusory allegations of retaliation, *Adams*, 40 F.3d at 75, and he must demonstrate that his exercise of his constitutional right was a "substantial" or "motivating" factor behind the allegedly retaliatory action, *Makdessi*, 2014 WL 5384596, at *2. The Fourth Circuit has instructed district courts to regard retaliation claims by inmates "with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Adams*, 40 F.3d at 74.

Hoye contends that in retaliation for filing a suit in Virginia circuit court, he was suspended from Common Fare for six months, charged with violating a nonexistent rule, and subjected to a search of his cell, property, and person. Compl. ¶¶ 36, 73–76. The Defendants have a clear, non-retaliatory reason for Hoye's six-month suspension from Common Fare—he violated the Common Fare agreement by eating main line food. Compl. ¶ 23; Def. Br. in Supp. 18. Hoye does not dispute that he violated the Common Fare agreement; instead he offers an explanation for his violation.

The only evidence Hoye presents that the suspension was retaliatory is that he was suspended shortly after he filed his suit. "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. *Henderson v. Commonwealth of Va.*, No. 7:06cv408, 2007 WL 2781722, at *5 (W.D. Va. Sept. 21, 2007) (quoting *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir.1993)), *aff'd sub nom. Henderson v. Virginia*, 272 F. App'x 264 (4th Cir. 2008).

Furthermore, the timeline of events undermines rather than bolsters Hoye's claim of retaliation. The named defendants in the state suit—Clarke and Pruett—were not involved in the decision to suspend Hoye from Common Fare. Defendants Martin and Gourdine were responsible for adjudicating Hoye's infraction. Compl. ¶¶ 25, 38; Gourdine Aff. Ex. C. Hoye

alleges that the defendants named in the state suit "conferred, confederated, and conspired together" to retaliate against him, Compl. ¶ 74, but he does not supply any evidence in support of this allegation. Most significantly, Gourdine recommended Hoye's suspension on September 18, a month before the state suit was filed. Gourdine Aff. ¶ 8, Ex. C. When Martin approved the suspension on October 15, only one of the defendants in Hoye's state suit had been served, and he was served that same day. *See* Va. Court Case Info. Sys., *Hoye v. Va. Dep't of Corr.*, CL13001162-00, *available at* http://ewsocis1.courts.state.va.us/CJISWeb/Case Detail.do. Clarke and VDOC were not served until October 17 and Taylor was not served until November 1. *Id.* Hoye can only support his claim with conclusory allegations, which are insufficient as a matter of law. *See Adams*, 40 F.3d at 74 (denying prisoner's retaliation claim when his complaint did not "contain any factual allegations tending to support his bare assertion[s]").

There is likewise no indication that either the disciplinary charge or the search was motivated by retaliation. Both the charge and the search occurred in December 2013, two months after the state lawsuit was filed. According to Hoye, he was subjected to "a detailed search of his person, property, and living area." Compl. ¶ 47. Searches are a common tool of prison administration and a common part of an inmate's life. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 555 (1979) (analyzing the practice of prison searches). The disciplinary charge occurred when Hoye was reviewing another inmate's court filing in the law library. Compl. ¶¶ 48–49. The officer on duty mistakenly believed that accessing another inmate's computer account was a rule violation, but at a hearing on the charge, the mistake was realized and Hoye was found not guilty. *Id.* ¶ 50; Hoye Aff. Ex. F. Hoye provides no evidence that the search or the disciplinary charge was retaliatory except that they occurred within two months of the filing of his state suit. These bare accusations are insufficient to support his claim. *See Adams*, 40 F.3d at 74.

Even if I were to assume that the disciplinary write-up and search were motivated by Hoye's state suit, there is no evidence that these events injured Hoye or impaired "his ability to exercise his constitutional right." *Adams*, 40 F.3d at 74. There is no indication that these two incidents caused more than a minor inconvenience in Hoye's life, which is insufficient to support a retaliation claim. *See A.C.L.U. v. Wicomico Cnty.*, 999 F.2d 780, 784 (4th Cir.1993) (requiring inmate to show that the alleged retaliatory action resulted in adversity sufficient to warrant concern about a "chilling effect" on one's right to access the courts); *Makdessi*, 2014 WL 5384596, at *5. Therefore, I recommend that the Court grant summary judgment on Count Six.

G.    *Amended Complaint*

"A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Keitz v. Unnamed Sponsors of Cocaine Research Study*, No. 3:11cv54, 2013 WL 5491844, at *2 (W.D. Va. Oct. 2, 2013). The court should deny leave to amend if the proposed amendment would prejudice the other party, if the moving party has acted in bad faith, or if the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

Hoye's proposed amended complaint would add three defendants and one cause of action. The additional defendants are VDOC Regional Ombudsman A. Bryant, CCC Unit Manager D. Hillian, and CCC Correctional Supervisor R. L. Drake. Mot. File Am. Compl. Attach. 1, at 11–13, ECF No. 33-1. The new cause of action alleges that Hoye's access to the courts has been obstructed in two ways. First, Bryant has impaired Hoye's ability to exhaust his administrative remedies by refusing to intake his grievances. *Id.* ¶¶ 37, 40, 60, 62, 96. Second, Hoye's approval for one of CCC's inmate passes was revoked, limiting his access to the law

library. *Id.* ¶¶ 65, 97. Hoye alleges that this revocation was orchestrated collectively by the Defendants and imposed by Hillian and Gourdine. *Id.*

This is not a case where the Defendants would be prejudiced by an amended complaint or Hoye has acted in bad faith. Nevertheless, Hoye's motion fails because the amendments he proposes are futile. First, adding Drake as a defendant for his allegedly retaliatory actions is futile because Hoye's retaliation claim fails as a matter of law. *See supra* Part III.F. Second, Hoye's allegations against Bryant fail to state a claim for which relief can be granted. The Constitution does not guarantee inmates access to grievance procedures or other procedures voluntarily established by a state. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Prison administrators' failure to follow a state's grievance procedure is therefore not cognizable under § 1983. *Barbour v. W. Reg'l Dir. VDOC*, No. 7:08cv98, 2008 WL 5062126, at *5 (W.D. Va. Nov. 26, 2008), *aff'd sub nom. Barbour v. W. Reg'l Dir., Va. Dep't of Corr.*, 324 F. App'x 282 (4th Cir. 2009) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988), *cert. denied*, 488 U.S. 898 (1988)). "Moreover, because state grievance procedures are separate and distinct from state and federal legal procedures, an officer's failure to comply with state grievance procedures does not compromise an inmate's right of access to the courts." *Id.* (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Hoye's complaints against Bryant therefore fail to state an independent claim or provide support for his allegations of denial of access.

Concerning law library access, inmates have a fundamental right to "adequate, effective, and meaningful" access to the courts to challenge their convictions or vindicate their constitutional rights. *Bounds v. Smith*, 430 U.S. 817, 822, 838 (1977). Inmates do not have an independent right to a law library, but exclusion from a prison's library can violate their rights if it impedes meaningful access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996).

23

Importantly, the right to reasonable access to the courts "is ancillary to the underlying claim," and a plaintiff must demonstrate a specific injury to his or her ability to pursue a claim from the alleged denial of access. *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002); *see also Strickler v. Waters*, 989 F.2d 1375, 1383 & n.10 (4th Cir. 1993) (holding a plaintiff must demonstrate that he has suffered "actual injury" from the restrictions placed upon him); *Hoglan v. Robinson*, No. 7:13cv258, 2014 WL 4680704, at *10-11 (W.D. Va. Sept. 19, 2014) (requiring a plaintiff to identify a specific, non-frivolous claim that denial of access has prevented him from litigating).

Even if Hoye's removal from the pass list completely precludes him from using the law library, Hoye does not identify a legitimate underlying claim upon which his denial of access allegations can rest. The amended complaint does not demonstrate a specific impediment to his ability to litigate the claims he raises within it, and as this report and recommendation demonstrates, they all fail as a matter of law. The amended complaint also does not identify any additional matters that Hoye is unable to litigate due to his removal from the pass list. Without this element, Hoye's proposed Count Seven fails to state a claim upon which relief can be granted and adding it to the complaint is futile. I therefore recommend that the Court deny Hoye's motion to file an amended complaint.

## IV. Conclusion

Hoye has failed to demonstrate a genuine issue of material fact for any of the six counts that he brings in his Complaint. The additional claims that Hoye raises in his amended complaint are futile. I find that the Defendants are entitled to judgment as a matter of law and therefore recommend that the presiding District Judge **GRANT** the Defendants' motion for summary

judgment, ECF No. 24, and **DENY** Hoye's motion for leave to file an amended complaint, ECF No. 33.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTER: February 27, 2015

Joel C. Hoppe
United States Magistrate Judge

Case 7:14-cv-00124-MFU   Document 38   Filed 02/27/15   Page 25 of 25   Pageid#: 399