## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **CHARLES T. HOYE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:14cv00124** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HAROLD CLARKE, et al.,** | ) | **By: Hon. Michael F. Urbanski** |
| | ) | **United States District Judge** |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM OPINION

<u>Pro</u> <u>se</u> plaintiff Charles T. Hoye brings this action pursuant to 42 U.S.C. § 1983, alleging various violations of the First and Fourteenth Amendments of the United States Constitution, Article One of the Constitution of Virginia, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the Rehabilitation Act ("RA"), 29 U.S.C. § 701, and the Virginians with Disabilities Act ("VDA"), Va. Code § 51.5-1. Defendants are the Director of the Virginia Department of Corrections, Harold Clarke; Virginia Department of Corrections Regional Administrator, Gary Bass; Warden of Coffeewood Correctional Center ("CCC"), Samuel Pruett; CCC Assistant Warden, I.T. Gilmore; CCC Reentry Manager, R.W. Martin; CCC Instititional Programs Manager, D. Gourdine; and CCC Food Service Administrator, L.D. Moore (collectively "defendants"). Hoye claims the defendants' failure to provide extra food on special meal days to prisoners participating in the Common Fare program violates his right to free exercise of religion, right to due process and equal protection under the law, and his rights under RLUIPA. Hoye also maintains that defendants' failure to provide a Common Fare diabetic option violates his right to free exercise of religion, right to due process and equal protection under the law, and rights under the ADA, VDA, RA, and RLUIPA. Finally, Hoye also alleges that the defendants retaliated against him after he filed suit in state court.

Defendants moved for summary judgment, Hoye filed a brief in opposition, and this matter was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 27, 2015 recommending that defendants' Motion for Summary Judgment, Dkt. No. 24, be granted and plaintiff's Motion for Leave to File an Amended Complaint, Dkt. No. 33, be denied. The report gave notice to the parties that they had fourteen days within which to file any objections. No objections were filed in that time period, and by Order entered March 20, 2015, the court adopted the magistrate judge's recommendation, granted summary judgment in favor of defendants, and dismissed this case. Hoye v. Clarke, No. 7:14cv00124, 2015 WL 1276913 (W.D. Va. Mar. 20, 2015).

On March 26, 2015, Hoye filed objections to the magistrate judge's report and recommendation. Dkt. No. 40. On April 2, 2015, Hoye filed a Motion for Reconsideration of the court's Order adopting the report and recommendation. Dkt. No. 41. In his Motion for Reconsideration, Hoye asserts that he timely filed his objections because he did not receive a copy of the report and recommendation until March 5, 2015 and mailed his objections on March 19, 2015. Hoye maintains that since the report and recommendation was not "served" on him until March 5, he had fourteen days from the date he physically received the report and recommendation to file his objections. Dkt. No. 41 at *2-3.

After the report and recommendation was entered on February 27, the parties had fourteen days after being served with a copy to file any objections. 28 U.S.C. § 636(b)(1)(C). Despite Hoye's argument to the contrary, pursuant to Rule 5(b)(2)(C) of the Federal Rules of Civil Procedure, service is complete upon mailing a paper to the person's last known address. Because service was made by mail in this case, the court adds three additional days to the calculation of the time to respond. Fed. R. Civ. P. 6(d). Accordingly, objections to the report and recommendation were due

2

no later than March 16, 2015. Thus, Hoye's objections were not timely filed. "In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

Given the fact that Hoye is proceeding pro se, however, the court will **GRANT** Hoye's Motion for Reconsideration, **VACATE** its March 20th Dismissal Order, and consider Hoye's objections. Finding they have no merit, the objections will be **OVERRULED**, the magistrate judge's report and recommendation **ADOPTED**, defendants' motion for summary judgment **GRANTED**, and this case **DISMISSED** for the reasons set forth below.

## I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject,

Case 7:14-cv-00124-MFU   Document 42   Filed 05/27/15   Page 3 of 21   Pageid#: 441

or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of [his] entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary

4

to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be given "the second bite at the apple []he seeks;" instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" McAirlaids, Inc. v. Kimberly-Clark

5

Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir. June 25, 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that "there is sufficient evidence favoring the non[-]moving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the Court must determine that no reasonable jury could find for the non[-]moving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

## III.

In his objections to the magistrate judge's report and recommendation, Hoye concedes all claims under Counts One and Two of the Complaint. See Dkt. No. 40 at *6, *13-15. Hoye objects to the magistrate judge's findings as to Counts Three, Four, Five, and Six. The magistrate judge addressed Hoye's claims in the following manner: (A) Free Exercise; (B) RLUIPA; (C); Equal Protection; (D) Due Process; (E) ADA, Rehabilitation Act, and VDA; and (F) Retaliation. The court will address Hoye's objections in the same manner.

### A. Free Exercise

In Count Three of the Complaint, Hoye alleges Defendants' refusal to provide a meal plan that is both kosher and accommodating to his diabetic dietary needs violates his right to free exercise of religion and rights to due process and equal protection under the law. As to the free exercise claim under Count Three, the magistrate judge found no constitutional violation based on

6

the sworn affidavit of a CCC nurse explaining that "CCC medical staff are available to 'assist and educate Hoye in making good and healthy food choices.' . . . [And] Hoye is authorized to keep snacks from the commissary in his cell should he need to eat in between mealtimes to maintain his blood sugar levels." Dkt. No. 38 at *12. Thus, the magistrate judge found Hoye could "adequately meet his medical and religious dietary needs" while on the Common Fare diet, and Hoye's alleged burden was merely an inconvenience rather than a substantial burden. Id.

The Free Exercise Clause of the First Amendment prohibits "policies that impose a substantial burden on the prisoner's right to practice his religion." Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014) (citing Lovelace v. Lee, 472 F.3d 174, 198 & n.8 (4th Cir. 2006)). "[A] substantial burden on religious exercise occurs when . . . government . . . 'puts substantial pressure on the [prisoner] to modify his behavior and significantly violate his beliefs.'" Lovelace, 472 F.3d at 187 (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)). A mere "'inconvenience on religious exercise' is not 'substantial.'" Brown v. Mathena, No. 7:14cv20, 2014 WL 4656378, at *5 (W.D. Va. Sept. 16, 2014) (quoting Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1323 (11th Cir. 2005)).

A prisoner's claim that his free exercise rights have been violated is analyzed under a two-step inquiry. First, the plaintiff must show a substantial burden of a sincerely held religious belief. The claim may still fail, however, if defendants show that the burden is "'reasonably adapted to achieving a legitimate penological objective." Wall, 741 F.3d at 498-99 (quoting Lovelace, 472 F.3d at 200). Indeed, "negligent violations of inmates' religious practices" do not amount to a First Amendment violation. Lovelace, 472 F.3d at 194.

The court agrees with the magistrate judge's conclusion that Hoye fails to show a substantial burden of a sincerely held religious belief. Hoye's primary complaints are that Common Fare participants are served last at meals and the diabetic diet consists of an additional protein at

7

breakfast and supper, whole grain bread rather than white bread, and a snack bag for the prisoner to take back to his cell at night. Hoye fails to put forth evidence that he is unable to adequately manage his diabetes while at the same time adhering to his religious beliefs, and the court is of the opinion that he is not forced to choose between one or the other. The specific diabetic menu offered by the jail is not mandatory for Hoye to manage his diabetes. Rather, it is the tenets underlying that menu that are necessary, and the evidence shows that Hoye can abide by those guidelines while eating the Common Fare meal. The Common Fare Diet "meets or exceeds minimum daily nutritional requirements." Dkt. No. 25-1 at *5. The sworn testimony of the CCC nurse affirms that Hoye can manage his diabetes while on Common Fare by eating suitable foods and monitoring his portion, carbohydrate, and sugar intake at meals. CCC staff were available to help Hoye with these meal decisions based on guidelines formulated by the American Diabetes Association. Further, Hoye can purchase snacks from the commissary in order to "medicate and maintain blood sugar levels" in between meals. Dkt. No. 25-2 at *2.

The fact that Hoye has to practice self-avoidance at meals while on the Common Fare Diet and pay for snacks to keep in his cell does not amount to a substantial burden on his right to practice his religion. While a kosher, diabetic diet might be more convenient for Hoye, the magistrate judge correctly concluded that the burden he faces now is not a substantial one but rather an inconvenience on his religious exercise. Brown, 2014 WL 4656378, at *5.[1] The record clearly shows that Common Fare not only provides a diet consistent with Hoye's religious needs but also accommodates his diabetic needs as well. Indeed, no reasonable juror could conclude that Hoye has

---

[1] This case is distinguishable from Moussazadeh v. Texas Department of Criminal Justice, 703 F.3d 751 (5th Cir. 2012), a case relied on by Hoye in his brief in opposition to the motion for summary judgment and his objections. In Moussazadeh, the jail provided kosher meals free of charge to all inmates requesting them, but the plaintiff in that case had to purchase all of his kosher meals in the prison commissary because of his heightened security level. Id. at 787. The Fifth Circuit Court of Appeals concluded it was a substantial burden of Moussasadeh's free exercise rights to have to purchase breakfast, lunch, and dinner at the commissary when other prisoners received kosher meals free of charge. Id. at 794. Here, however, Hoye receives his kosher meals at no additional charge and is only faced with the mere inconvenience of purchasing snacks in the commissary.

been unable to manage his diabetes while on the Common Fare Diet or that his free exercise rights have been substantially burdened. As such, Hoye's free exercise claim under Count Three fails.

## B. RLUIPA

In Count Five of the Complaint, Hoye alleges the defendants violated his rights under RLUIPA. In his objection to the report and recommendation, Hoye relies solely on his arguments regarding the magistrate judge's substantial burden analysis as to his free exercise claim in support of his RLUIPA claim. RLUIPA "provide[s] greater protection for religious exercise than is available under the First Amendment." Holt v. Hobbs, 135 S. Ct. 853, 859-60 (2015). Accordingly, claims under RLUIPA are evaluated under a strict scrutiny standard rather than reasonableness. See Lovelace, 472 F.3d at 186. However, a prisoner bears the same initial burden of proof under RLUIPA as he does under the First Amendment and must put forth evidence that government action has substantially burdened his sincerely held religious beliefs. Brown, 2014 WL 4656378 at *5 (citing Lovelace, 472 F.3d at 187). For the reasons stated in part III-A above, the court agrees with the conclusions of the magistrate judge as to Hoye's RLUIPA claim. Hoye fails to establish a substantial burden on his sincerely held religious beliefs, and therefore his RLUIPA claim under Count Five fails.

## C. Equal Protection

In Count Three, Hoye also claims that having to choose between the Common Fare Diet and the diabetic option violates his right to equal protection under the law. As to this claim, the magistrate judge concluded that as a Common Fare participant, Hoye was not "similarly situated" to those who eat regular meals. Thus, Hoye failed to show "any disparate treatment between himself and other inmates who receive Common Fare and are similarly situated to him." Dkt. No. 38 at *14-15. In his objection, Hoye argues the magistrate judge misunderstands his claim because "[t]he

9

disparate treatment of which [Hoye] complains is that between himself and other diabetics not between himself and other [Common Fare] participants." Dkt. No. 40 at *15 (emphasis removed).

The Fourteenth Amendment prohibits any state from denying "to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, § 1. Thus, "similarly situated individuals [must] be treated alike" under the law. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). Inmates do not lose their equal protection rights upon incarceration, but "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). Therefore, equal protection analysis is altered for prisoner claims due to the "needs and problems inherent in a penitentiary." Morrison, 239 F.3d at 654.

Hoye's attempt to refine his claim fails because the equal protection claim still rests on his argument that he is forced to choose between the Common Fare Diet and the diabetic option. Hoye is not similarly situated to other diabetics who do not participate in the Common Fare program. See Peters v. Blue Ridge Reg'l Jail, No. 7:06cv00595, 2006 WL 3761624, at *4 (W.D. Va. Dec. 21, 2006) (diabetic inmate with "severely unstable blood sugar levels" was not similarly situated to other diabetics). Even assuming that Hoye satisfies the first prong of an equal protection claim, however, the claim still fails because CCC's regulations regarding the Common Fare program are "'reasonably related to legitimate penological interests.'" Morrison, 239 F.3d at 654 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Virginia Department of Corrections ("VDOC")—and individual prisons especially—simply cannot accommodate every prisoner's demand to change the Common Fare program. "[I]t is much more expensive for VDOC to provide an inmate with the Common Fare diet than with

ordinary prison fare." Hammer v. Keeling, No. 1:14cv8, 2015 WL 925880, at *6 (E.D. Va. Apr. 8, 2015) (internal quotation marks omitted); Blount v. Ray, No. 7:08cv504, 2009 WL 2151331, at *6 (W.D. Va. July 17, 2009). Incorporating a diabetic menu for Common Fare participants at CCC, as Hoye requests, is not allowed per the VDOC Food Service Manual. "The planned Common Fare menu may not be changed at the facility level, except where seasonal availability of produce items warrants that substitutions be made." Dkt. No. 25-1 at *6. The Common Fare program is highly regulated with specific requirements regarding food procurement, storage, preparation, and disposal. For example, dishes and trays from the Common Fare program must be washed separately from regular menu trays and dishes. Id. This is a reasonable justification for why Common Fare participants must eat after the regular menu is served.

Furthermore, the VDOC has "undertaken substantial effort to design and implement a single, centralized program that is certified by experts in religion and nutrition to accommodate [Hoye's] dietary beliefs and nutritional needs." Muhammad v. Mathena, No. 7:14cv00134, 2015 WL 300363, at *3 n.4 (W.D. Va. Jan. 22, 2015). Common Fare is "a cost-efficient, uniform manner by which to accommodate inmates' various religious dietary beliefs at numerous VDOC facilities." Id. As such, the court finds that any disparate treatment Hoye may be subjected to is reasonably related to the legitimate penological interest of "reasonably accommodat[ing] special diets to meet the basic nutritional needs of offenders whose religious beliefs require the adherence to religious dietary laws." Dkt. No. 25-1 at *6. Therefore, Hoye's equal protection claim under Count Three fails.

### D. Due Process

In Count Three of the Complaint, Hoye alleges a general due process violation for having to choose between the diabetic option and the Common Fare menu. The magistrate judge treated Hoye's claim as a violation of his procedural due process rights afforded to him under the Fourteenth Amendment and concluded Hoye's procedural due process claim for his six-month

11

suspension from Common Fare failed as a matter of law. Dkt. No. 38 at *16-17. In his objection, Hoye claims a diabetic option for Common Fare participants is a substantive due process guarantee and argues he also has a procedural due process claim because he has "effectively been permanently removed from Common Fare." Dkt. No. 40 at *16 (citation and internal quotation marks omitted).

## 1.

In order for a prisoner to establish a procedural due process claim he must demonstrate that (1) he was denied a liberty interest arising under the constitution or state law; (2) the denial imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life;" and (3) the process employed by the prison was "constitutionally inadequate." Lovelace, 472 F.3d at 202 (internal quotations omitted) (citing Wilkinson v. Austin, 545 U.S. 209, 220-21 (2005); Sandin v. Conner, 515 U.S. 472, 484 (1995)). Courts assess the adequacy of a prison's procedures by

> balancing three factors: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation through the procedures used and the probable value, if any, of alternative or additional procedures; and (3) the state's interest, including the function involved and the fiscal and administrative burdens of added safeguards.

Id. (citing Wilkinson, 545 U.S. at 224-25). In the prison context, the court must take into consideration "the state's interest in prison management, particularly in allocating scarce resources and in maintaining order, security, and discipline." Id. (citations omitted).

Hoye's procedural due process claim fails because he has not shown that the prison's process was procedurally defective. Hoye was suspended from Common Fare for violating the criteria outlined in the Common Fare Agreement he signed in order to participate in the program. Dkt. No. 25-1 at *3. Sanctions for violations of the Common Fare Agreement are provided for in VDOC Operating Procedure 841.3. Id. at *8. Pursuant to Operating Procedure 841.3, an inmate's first violation of the Common Fare Agreement results in a six-month suspension from the program. At the conclusion of the suspension, the inmate "may submit a written request to the Facility Unit

12

Head or designee to be reinstated . . . ." VDOC Operating Procedure 841.3(IV)(B)(15) (amended June 3, 2013), available at https://vadoc.virginia.gov/about/procedures/documents/800/841-3.pdf.

Hoye's six-month suspension from Common Fare does not satisfy the "atypical or significant hardship" prong of a procedural due process claim. Awe v. Va. Dept. of Corrections, No. 7:12cv00546, 2013 WL 5988869, at *3 (W.D. Va. Nov. 12, 2013). As the magistrate judge noted, Hoye did not allege that he had been permanently removed from Common Fare in either the Complaint or his proposed Amended Complaint. Additionally, even if Hoye had alleged a permanent removal from Common Fare, he has failed to produce any evidence or even allege that he requested to be placed back on Common Fare at the conclusion of his six-month suspension in accordance with VDOC procedure.

Finally, the prison's procedures for handling violations of Common Fare are constitutionally adequate: "they include a hearing before an administrator at which the inmate can present evidence and argument on his or her own behalf and the opportunity to appeal the administrator's ruling." Dkt. No. 38 at *16; see also Blount, 2009 WL 2151331 at *6. Hoye has not presented any evidence nor even alleged that he submitted a request to be reinstated to Common Fare at the conclusion of his suspension. Furthermore, Hoye has not presented any evidence to support his assertions that the hearing process as applied was constitutionally defective in any way.[2] Accordingly, Hoye's procedural due process claim under Count Three fails.

## 2.

Substantive due process, as embodied in the Fourteenth Amendment, bars "'certain government actions regardless of the fairness of the procedures used to implement them.'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). The guarantee of substantive due process protects "the individual against arbitrary action of

[2] "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

13

government" but "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. at 845 (citations and internal quotation marks omitted). Substantive due process claims are analyzed under a "shocks the conscience" standard. Id. at 846; Troxel v. Granville, 530 U.S. 57, 65 (2000). The Supreme Court has described activity that shocks the conscience as violating "decencies of civilized conduct," Rochin v. California, 342 U.S. 165, 172-73 (1952), and "so 'brutal' and 'offensive' that it [does] not comport with the traditional ideas of fair play and decency," Breithaupt v. Abram, 352 U.S. 432, 435 (1957). Mere negligence by the defendants will not give rise to a substantive due process claim. Rather, their conduct must have "'intended to injure [Hoye] in some way unjustifiable by any government interest.'" Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (quoting Lewis, 523 U.S. at 849).

Hoye argues that a Common Fare menu for diabetics is a liberty interest protected by substantive due process. Dkt. No. 40 at *15-16. Construing his arguments liberally, the court reads this argument as either a continuation of his earlier claim that having to choose between a diabetic meal or a Common Fare meal infringes on his First Amendment rights, or that defendants have been deliberately indifferent to his medical needs or failed to provide him with adequate nutrition by failing to provide a diabetic Common Fare meal. Hoye cannot assert a substantive due process claim based on his claim that having to choose between a diabetic option and the Common Fare program infringes on his religious beliefs because, as discussed above, the explicit text of the First Amendment protects Hoye's free exercise rights. See Lewis, 523 U.S. at 842 (citing Albright v. Oliver, 510 U.S. 266, 273 (1994) (Rehnquist, C.J.) (plurality opinion)("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.")). Nor can Hoye state a substantive due process claim on the grounds that defendants have been deliberately indifferent to his medical

14

condition or failed to provide him with adequate nutrition because such claims are properly brought under the Eighth Amendment's prohibition against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Muhammad, 2015 WL 300363 at *2. However, even if Hoye had brought an Eighth Amendment claim, that claim would fail as well. There is no evidence that defendants were deliberately indifferent "by intentionally interfering" with Hoye's prescribed medical treatment. Id. at 105. Neither negligence, malpractice, nor "[d]isagreements between an inmate and a physician over the inmate's proper medical care" violates the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Furthermore, there is no evidence that Hoye "suffered an objective, 'serious deprivation of a basic human need.'" Muhammad, 2015 WL 300363 at *2 (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).

As explained above, no reasonable juror could conclude that Hoye is unable to manage his diabetes while on the Common Fare program, and the prison is not required to unilaterally alter the Common Fare menu based on a prisoner's request. Thus, Hoye cannot state a claim for a violation of his substantive due process rights under Count Three, nor can he state an Eighth Amendment claim even with a broad and liberal reading of his Complaint. As such, defendants are entitled to summary judgment as to Count Three in its entirety.

### E. ADA, RA, and the Virginia Act

In Count Four of the Complaint, Hoye alleges that the defendants' refusal to provide a diabetic Common Fare meal constitutes discrimination under the ADA, RA and the VDA. The magistrate judge determined that Hoye failed to put forth a primia facie case under any of the acts because he did not present any evidence that he has been discriminated against because of his disability. Dkt. No. 38 at *17-18. In his objection, Hoye argues that having to choose between the diabetic meal and the Common Fare program "is an act of exclusion" and that an incident in August 2013 creates a triable issue as to Count Four. Dkt. No. 40 at *18-19. For security reasons, the

15

morning meal service at CCC was delayed on August 21, 2013. Hoye detected signs of low blood sugar, "announced his medical emergency to the Food Service Supervisor" during the general population meal service, and took a regular meal rather than waiting to receive a Common Fare meal. Dkt. No. 1 at *18.

Generally, in order to recover under either the RA or ADA, a plaintiff must show "(1) []he has a disability, (2) []he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) []he was excluded from participation in or denied the benefits of such service, program or activity, or otherwise discriminated against, on the basis of [his] disability." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). The elements of a claim under the VDA are substantially similar to an ADA or RA claim because the VDA "was modeled after and is almost identical to the Rehabilitation Act." Wolsky v. Med. Coll. of Hampton Roads, 1 F.3d 222, 224 (4th Cir. 1993).

Assuming without deciding that Hoye can satisfy the first two prongs of a disability discrimination claim, he fails to satisfy the third prong. While defendants are required to "make 'reasonable modifications' to enable the disabled person to receive the services or participate in programs or activities," they do not have to "employ any and all means to make services available to persons with disabilities." Miller v. Hinton, 288 F. App'x 901, 902 (4th Cir. 2008) (per curiam) (quoting 42 U.S.C. § 12131(2)). The defendants have made reasonable modifications so that Hoye may participate in Common Fare and manage his diabetes. Hoye can manage portion, carbohydrate, and sugar intake while eating Common Fare meals with the assistance of prison staff, and he may purchase snacks in the commissary to help manage his blood sugar in between meals. Common Fare is a highly regulated, state-wide program attempting to accommodate the religious dietary preferences of a multitude of inmates. Defendants are not required to provide a diabetic Common Fare meal when Hoye can adequately manage his condition through other reasonable modifications.

16

Even assuming defendants did not provide a reasonable modification, Hoye still cannot satisfy the causation requirement under any of the acts. While both the RA and ADA are generally construed together and the analysis under both is similar, the Fourth Circuit has distinguished the causation requirement of each act. Baird ex rel. Baird v. Rose, 192 F.3d 462, 469 (4th Cir. 1999). Thus, in order to prevail under the RA, a plaintiff must show "that he was excluded from the . . . benefit due to discrimination solely on the basis of his disability." Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995). An ADA claim requires a plaintiff to show that his disability "was a motivating factor" for excluding him. Baird, 192 F.3d at 470.[3] Hoye believes that because he has diabetes the defendants' refusal to provide a diabetic Common Fare menu is presumptively discriminatory. However, Hoye misconstrues the causation requirement for a claim under any of these acts. There is absolutely no evidence in the record that Hoye's disability was a motivating factor, much less the sole basis, for defendants' decision not to offer a diabetic Common Fare menu.[4] Indeed, the undisputed evidence clearly shows that defendants are not permitted to alter the Common Fare menu per the VDOC's operating procedures as they stated in their responses to Hoye's grievances and requests. See Dkt. No. 1-1 at *4, *7; Dkt. No. 25-1 at *5-6,

The court does not find that the August 2013 incident creates a genuine issue of material fact as to whether Hoye can manage his diabetes while on Common Fare. That singular instance is the only evidence Hoye cites to support his claim that he is unable to manage his condition. But that one isolated event was precipitated by a security threat that delayed regular meal service and was wholly outside the hands of the defendants. Hoye fails to put forth any other evidence that he has

---

[3] The VDA prohibits discrimination "on the basis of [a] disability." Va. Code § 51.5-40. Thus, the court will address Hoye's VDA claim under the less stringent causation standard associated with the ADA.

[4] None of the cases Hoye cites as to his exclusion argument involve disability discrimination claims. As such, they are inapplicable. See Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, 764 F.3d 1199, 1237 (10th Cir. 2014) (case dealing with statutory interpretation and cited language is reference to a party's argument); LeCroy v. United States, 739 F.3d 1297, 1313 (11th Cir. 2014) (discussing attorney's tactical decisions in criminal defendant claim of ineffective assistance of counsel); Westwood Apex v. Contreras, 644 F.3d 799, 805 (9th Cir. 2011) (statutory interpretation of the term "defendant" in 28 U.S.C. § 1441).

17

been unable to manage his diabetes under normal conditions at the prison, and therefore, the court concludes there is no genuine issue of material fact as to this or any other claim.

No reasonable juror could conclude that defendants denied Hoye a diabetic Common Fare menu because of his disability. Because Hoye has failed to establish the third prong of an ADA, RA or VDA claim, defendants are entitled to summary judgment as to Count Four.

### F. Retaliation

In Count Six, Hoye alleges that defendants retaliated against him for filing grievances regarding Common Fare, filing a state court declaratory judgment action, and for filing the action in this court. Hoye claims his suspension from Common Fare, a later disciplinary charge involving Hoye's alleged use of another inmate's computer account, and a search of his cell, property, and person are all acts of retaliation. The magistrate judge found no evidence in the record supporting Hoye's claims in Count Six. Specifically, the magistrate judge noted that two of the defendants, Clarke and Pruett, played no role in the decision to suspend Hoye from Common Fare, Hoye was recommended for suspension from Common Fare one month prior to Hoye's filing of the civil suit, and the day the suspension was approved, only one of the defendants had been served in the state suit. Dkt. No. 38 at *20-21. The magistrate judge also noted that the disciplinary charge and search occurred two months after the lawsuit was filed, and there was no other evidence to show they were retaliatory in nature. Id. at *21. In his objection, Hoye argues that the magistrate judge resolved conflicting evidence in the defendants' favor and improperly took judicial notice of court records in the state court civil suit.

There is no question that prisoners retain their right to access the courts while incarcerated, and prison officials may not retaliate against an inmate for exercising that right. Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). However, a prisoner's retaliation claim "must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state

18

penal institutions." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). A retaliation claim requires an inmate to present evidence that (1) he exercised a constitutional right, (2) the defendant took some action that impaired his ability to exercise that right, and (3) the inmate's exercise of his constitutional right was a substantial or motivating factor for the defendant's action. See Adams, 40 F.3d at 75; Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). The requisite causal connection requires a showing of more than mere temporal proximity between the exercise of a plaintiff's right and the alleged retaliatory action. See e.g., Wagner, 13 F.3d at 91; Shields v. Fed. Exp. Corp., 120 F. App'x 956, 963 (4th Cir. 2005) (retaliation in employment context) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)); Henderson v. Commonwealth of Va., No. 7:06cv408, 2007 WL 2781722, at *5 (W.D. Va. Sept. 21, 2007) (quoting Wagner, 13 F.3d at 91).

Hoye's retaliation claim fails because he cannot establish the requisite causal connection between his protected activities and the alleged retaliatory actions. First, there is no indication that the magistrate judge viewed any conflicting evidence or drew any inferences in the defendants' favor. Hoye mistakes his bare assertions and conclusory allegations as facts. The foundation of Hoye's retaliation claim is his own conclusion that the Common Fare suspension, the law library disciplinary charge, and search were in response to his law suit and use of the prison's grievance procedures.

For example, Hoye submitted his own declaration wherein he states "Mr. Moore advised me that he and other members of the [CCC] Administration had been party to a telephonic meeting with the Assistant Attorney General . . . (October 10 & 11, 2013 – presumably in response to being served with the civil action in Culpeper County Circuit Court[)] . . . . Dkt. No. 32-1 at *6. Hoye presumes defendants were aware of the pending state court action because he filed it on October 10, 2013, but there is no evidence to support this assumption. One of the defendants explicitly denied any knowledge of the civil suit in response to a grievance Hoye filed on October 15. See Dkt. No. 1-1 at *13. As to the disciplinary charge, Hoye admits in his declaration that he received a hearing and

19

was exonerated because no rule existed prohibiting inmates from accessing other inmate's computer accounts. Dkt. No. 32-1 at *7, *15. Indeed, the only evidence to support Hoye's retaliation claim is the timing of the suspension, disciplinary charge, and search and the filing of his civil suit in state court. Temporal evidence alone, however, "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner, 13 F.3d at 91.  In other words, Hoye has failed to put forth more than a mere scintilla of evidence supporting his retaliation claim. Glynn, 710 F.3d at 213.

Furthermore, it was not improper for the magistrate judge to take judicial notice of the court records in Hoye's state court civil suit. Federal Rule of Evidence 201 permits a court on its own initiative to take judicial notice of a fact that is "not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Specifically, a federal court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992)); Colonial Penn Ins. Co. v. Coil, 887 F. 2d 1236, 1239 (4th Cir. 1989) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979); Green v. Warden, U.S. Penitentiary, 699 F.2d 364, 369 (7th Cir. 1983); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir. 1980)).

Hoye provided the case number for the state suit in his opposition brief and averred that defendants were served with process in that suit the day before his suspension. Dkt. No. 32 at *30, n.5. The state court proceeding is directly related to the claims in this case, and there is no reason to question the accuracy of the state court's docket entries. Regardless, the magistrate judge had already concluded that Hoye's claim hung by the too tenuous thread of temporal proximity and only discussed the state court records to show that even if Hoye's claim could rest on temporal evidence alone, the time line of events did not support his allegations. See Dkt. No. 38 at *20-21. As Hoye

20

has failed to present any evidence to create a genuine issue of material fact as to his retaliation claim, defendants are entitled to summary judgment on Count Six.

### G. Amended Complaint

Hoye's objection to the magistrate judge's denial of granting leave to amend merely quotes Federal Rule of Civil Procedure 15 and asks the court to grant him leave to amend. Such a general and conclusory objection does not direct the court to any specific error in the report and recommendation as to Hoye's request for leave to amend and has the "same effect as a failure to object, or as a waiver of such objection." <u>Moon</u>, 742 F. Supp. 2d at 829. Accordingly, the court finds that the magistrate judge's conclusions as to Hoye's request are not clearly erroneous and denies Hoye leave to amend.

### IV.

For the foregoing reasons, Hoye has failed to put forth sufficient evidence such that a jury could rule in his favor as to any of his claims. Accordingly, defendants are entitled to summary judgment on all counts. An appropriate order will be entered this day.

Entered:  May 27, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge